**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| BARRY SCHIMMEL, Individually and on Behalf of all Others Similarly Situated, | ) | **CASE NO.** |
| Plaintiff, | ) | |
| vs. | ) | CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS |
| UNITED RENTALS, INC., WAYLAND R. HICKS, BRADLEY S. JACOBS, JOSEPH B. SHERK, and JOHN N. MILNE, | ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) | September 27, 2004 |

Plaintiff, Barry Schimmel, individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding United Rentals, Inc. ("United Rentals" or the "Company"), securities analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal class action on behalf of purchasers of the securities of United Rentals between October 23, 2003 to August 30, 2004, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act.

4. Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1391(b). Many of the acts charged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District and United Rentals conducts business in this District.

5. In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

6. Plaintiff, Barry Schimmel, as set forth in the accompanying certification, incorporated by reference herein, purchased the common stock of United Rentals at artificially inflated prices during the Class Period and has been damaged thereby.

7. Defendant, United Rentals, is a corporation organized under the laws of Delaware with its principal executive offices located at Five Greenwich Office Park, Greenwich, CT 06830.

8. Defendant, Wayland R. Hicks ("Hicks"), is United Rentals' Chief Executive Officer and a Director.

9. Defendant, Bradley S. Jacobs ("Jacobs"), is United Rentals' Chairman of the Board of Directors and was until December 2003 United Rentals Chief Executive Officer.

10. Defendant, John N. Milne ("Milne"), is United Rentals' Chief Financial Officer.

11. Defendant, Joseph B. Sherk ("Sherk"), is United Rentals' Vice President and Corporate Controller (Principal Accounting Officer).

12. Defendants Hicks, Jacobs, Milne, and Sherk are collectively referred to hereinafter as the "Individual Defendants." During the Class Period, each of the Individual Defendants, as senior executive officers and/or directors of United Rental were privy to non-public information concerning its business, finances, products, markets and present and future business prospects via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or recklessly disregarded the fact that adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

13. Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about the Company's business, operations,

operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof, and via reports and other information provided to them in connection therewith.

14. It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein are the collective actions of the narrowly defined group of defendants identified above. Each of the above officers of United Rental, by virtue of their high-level positions with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations, growth, financial statements, and financial condition, as alleged herein. Said defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware, or recklessly disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

15. As officers and controlling persons of a publicly-held company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, and was traded on the New York Stock Exchange ("NYSE"), and governed by the provisions of the federal securities

laws, the Individual Defendants each had a duty to disseminate prompt, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded common stock would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

16. The Individual Defendants participated in the drafting, preparation, and/or approval of the various public and shareholder and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature. Because of their Board membership and/or executive and managerial positions with United Rental, each of the Individual Defendants had access to the adverse undisclosed information about United Rental's financial condition and performance as particularized herein and knew or recklessly disregarded that these adverse facts rendered the positive representations made by or about United Rental and its business issued or adopted by the Company materially false and misleading.

17. The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Each Individual Defendant was provided with copies of the documents alleged

herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and releases detailed herein and is therefore primarily liable for the representations contained therein.

18. Each of the defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of United Rental common stock by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (1) deceived the investing public regarding United Rental's business, operations, management and the intrinsic value of United Rental's common stock; and (2) caused Plaintiff and other members of the Class to purchase United Rental's common stock at artificially inflated prices.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

19. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased the securities of United Rentals between October 23, 2003 to August 30, 2004, inclusive (the "Class Period") and who were damaged thereby. Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

20. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, United Rentals common shares were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by United Rentals or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

21. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

22. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

23. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and operations of United Rentals; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

24. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

### Background

25. United Rentals is an equipment rental company in North America with a network of more than 730 rental locations in the United States, Canada and Mexico. In addition to renting equipment, the Company sells used rental equipment, acts as a dealer for new equipment, and sells related merchandise and contractor supplies, parts and service. Its customers include construction and industrial companies, manufacturers, utilities, municipalities, homeowners and others.

### Materially False and Misleading Statements Made During the Class Period

26. The Class Period commences on October 23, 2003. At that time, United Rentals reported its financial and operational results for the third quarter ended September 30, 2003. United Rentals reported revenues of $805.1 million, compared to $783.1 million for the third quarter of 2002. Net income for the quarter was $31.9 million and earnings per diluted share were $0.34. This includes a non-cash charge of $11.7 million ($10.2 million after-tax or $0.10

per diluted share) attributable to the vesting of restricted shares granted to senior executives in 2001.

27. On October 28, 2003, United Rentals announced that it had priced an offering of $125 million aggregate principal amount of 1 7/8% Convertible Senior Subordinated Notes due 2023. The Company had granted the initial purchasers of the notes a 30-day option to purchase up to an additional $18.75 million aggregate principal amount of notes. The notes would be convertible, under certain circumstances, into the Company's common stock at an initial conversion rate of 38.952 shares per $1,000 principal amount of notes. This was equivalent to a conversion price of approximately $25.67 per share. Holders of the notes would have the ability to require the Company to repurchase the notes in cash, in whole or in part, in October 2010 and specified times thereafter. The repurchase price would be 100% of the principal amount of the notes plus accrued and unpaid interest. The Company planned to use the net proceeds of the convertible notes offering to buy out existing equipment leases and/or for general corporate purposes.

28. On October 29, 2003, United Rentals announced that it had priced an offering of senior subordinated notes. The size of the offering was increased to $525 million from the previously announced $450 million. The notes would bear interest at 7.75% and be due in 2013. The Company expected to use approximately $424 million of the offering net proceeds to redeem $205 million face amount of outstanding 8.80% Senior Subordinated Notes due 2008 and $200 million face amount of outstanding 9 1/2% Senior Subordinated Notes due 2008. The balance would be used to buy out existing equipment leases and/or for general corporate purposes.

29. On November 14, 2003, United Rentals filed with the SEC its quarterly report on Form 10-Q. The Company's Form 10-Q was signed by defendants Milne and Sherk and reaffirmed the Company's previously announced financial results. Moreover, the Company represented the following:

> The Consolidated Financial Statements of the Company included herein are unaudited and, in the opinion of management, such financial statements reflect all adjustments, consisting only of normal recurring adjustments, necessary to present fairly the results of the interim periods presented. Interim financial statements do not require all disclosures normally presented in year-end financial statements, and, accordingly, certain disclosures have been omitted.

30. Additionally, the Company's Form 10-Q included the following Certifications signed by each of defendants Jacobs and Milne:

> **2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;**
>
> **3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrants as of, and for, the periods presented in this report**; […] [Emphasis added.]

31. On January 16, 2004, United Rentals announced that it would be refinancing "a substantial portion of its outstanding indebtedness over the next several weeks. The refinancing was being undertaken to take advantage of current market opportunities that should allow the Company to reduce its interest expense and extend the maturities of a substantial portion of its debt." More specifically, the Company stated:

> As part of the refinancing, the company expects to replace its existing senior secured credit facility with a new secured credit facility and refinance outstanding senior and subordinated notes. The refinancing will be funded primarily through the issuance of new senior and subordinated notes and funds available under the new secured credit facility. The debt expected to be refinanced includes: (i) $640 million of term loans, (ii) all borrowings under the company's revolving credit facility, (iii) $860 million principal amount of 10 3/4% Senior Notes due 2008, (iv) $300 million principal amount of 9 1/4% Senior Subordinated Notes due 2009 and (v) $250 million principal amount of 9 % Senior Subordinated Notes due 2009.
>
> The company also announced that, as part of the refinancing, it has commenced a cash tender offer and consent solicitation for all of its outstanding 10 3/4% Senior Notes due 2008 ("10 3/4% Notes"). These notes are comprised of (i) $650 million principal amount of 10 3/4% Notes issued under an indenture dated April 20, 2001 (CUSIP No. 911365AB0) and (ii) $210 million principal amount of 10 3/4% Notes issued under an indenture dated December 24, 2002 (CUSIP No. 911365AE4).

32. On January 23, 2004, United Rentals announced that it had priced its offerings of $1 billion of senior notes and $375 million of senior subordinated notes. The senior notes would bear interest at 6 1/2% and be due in 2012, and the senior subordinated notes would bear interest at 7% and be due in 2014. The Company expected to use the proceeds from these offerings to refinance existing debt as previously announced.

33. On February 17, 2004, United Rentals announced that it had completed its offerings of $1 billion of 6 1/2% Senior Notes Due 2012 and $375 million of 7% Senior Subordinated Notes Due 2014. The Company also announced that it obtained a new senior secured credit facility. The Company was using the proceeds from the note offerings, together with borrowings available under the new credit facility, to complete the refinancing of $2.1 billion of its debt in accordance with its previously announced plan. The refinancing would

reduce the Company's interest expense and extend the maturities of a substantial portion of the company's debt. More specifically, the Company stated:

> As part of the refinancing, the company (i) repaid $639 million of term loans and $52 million of borrowings that were outstanding under the company's old credit facility, (ii) repurchased $845 million principal amount of its 10 3/4% Senior Notes due 2008 (which represented more than 98% of the total outstanding) pursuant to its previously announced tender offer, (iii) called for redemption $300 million principal amount of its outstanding 9 1/4% Senior Subordinated Notes due 2009 and (iv) will call for redemption $250 million principal amount of its outstanding 9% Senior Subordinated Notes due 2009. The redemption of the 9 1/4% Senior Subordinated Notes is expected to be completed on February 27, 2004, and the redemption of the 9% Senior Subordinated Notes is expected to be completed on April 1, 2004.
>
> The company's new senior secured credit facility replaces the facility the company previously had in place. The new facility includes (i) a $750 million term loan, (ii) a $650 million revolving credit facility that may be used for loans and/or letters of credit (up to a maximum of $250 million for letters of credit) and (iii) a $150 million institutional letter of credit facility that provides additional letter of credit capacity. The term loan will be obtained in two draws. An initial draw of $550 million was obtained upon the closing of the credit facility, and an additional $200 million is expected to be obtained on April 1, 2004.

34. On February 25, 2004, United Rentals reported its fourth quarter and full year 2003 financial and operational results for the period ended December 31, 2003. The press release stated, in pertinent part, as follows:

> For the full year 2003, the company reported revenues of $2.87 billion, an increase of 1.6% compared with $2.82 billion for 2002. Same-store rental revenues for the full year increased 3.7% from the prior year and rental rates increased 2.1%. Revenues generated by sharing equipment between branches improved to 11.5% of rental revenues compared with 11.3% in 2002. Equipment utilization for the full year 2003 was essentially flat with the prior year at 57.1% compared with 57.0% in 2002.

> Adjusted net income for the full year was $71.8 million and adjusted diluted earnings per share was $0.75 compared with adjusted net income of $107.6 million and adjusted diluted earnings per share of $1.11 in 2002. The adjusted net income and diluted earnings per share exclude the charges described below as well as the increase to diluted earnings per share from the company's repurchases of its preferred securities. […]
>
> The results above for the fourth quarter and full year 2003 exclude aggregate charges, net of tax, of $320.2 million and $330.4 million, respectively. These charges relate to goodwill impairment, buy-out of equipment leases, debt refinancing, notes receivables write-off, and, in the case of the full year results, vesting of restricted shares granted to executives in 2001. The results above for the fourth quarter and full year 2002 exclude aggregate charges, net of tax, of $217.1 million and $505.4 million, respectively. These charges relate to goodwill impairment, restructuring costs, debt refinancing, and, in the case of the full year results, a change in accounting principle relating to goodwill.
>
> The results for the full year 2003 and the fourth quarter and full year 2002 also exclude the positive impacts on diluted earnings per share of repurchases by the company of its 6 1/2% convertible quarterly income preferred securities. These repurchases added $0.01 to diluted earnings per share for the full year 2003, $0.39 to diluted earnings per share for the fourth quarter of 2002 and $0.47 for the full year 2002.
>
> Taking into account the excluded items, the company reported GAAP results as follows: a net loss of $305.1 million and a loss available to common stockholders per diluted share of $3.96 for the fourth quarter 2003; a net loss of $258.6 million and a loss available to common stockholders per diluted share of $3.35 for the full year 2003; a net loss of $209.0 million and a loss available to common stockholders per diluted share of $2.33 for the fourth quarter 2002; and a net loss of $397.8 million and a loss available to common stockholders per diluted share of $4.78 for the full year 2002.

35. On March 15, 2004, United Rentals filed with the SEC its annual report on Form 10-K. The Company's Form 10-K was signed by the Individual Defendants and reaffirmed the

Company's previously announced financial results. Additionally, the Company's Form 10-K contained the following opinion from its independent auditors:

> In our opinion, the consolidated financial statements referred to above present fairly, in all material respects, the consolidated financial position of United Rentals, Inc. at December 31, 2003 and 2002, and the consolidated results of its operations and its cash flows for each of the three years in the period ended December 31, 2003 in conformity with accounting principles generally accepted in the United States.

36. Moreover, the Company's Form 10-K included the following Certifications signed by each of defendants Hicks and Milne:

> **2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;**
>
> **3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrants as of, and for, the periods presented in this report**; […] [Emphasis added.]

37. On April 22, 2004, United Rentals reported its financial and operational results for the first quarter ended March 31, 2004. United Rentals reported first quarter revenues of $645 million, an increase of 8.9% compared with $592 million for the first quarter of 2003. Adjusted operating income for the first quarter of 2004 was $39.9 million compared with operating income of $40.2 million for the first quarter of 2003. The adjusted net loss for the first quarter of 2004 was $5.9 million and the adjusted loss per share was $0.08 compared with a net loss of $8.7 million and a loss per share of $0.11 for the first quarter of 2003. Commenting on

these results, defendant Hicks stated:

> "Adjusted results for the seasonally-slow first quarter improved from last year and were better than our expectations. The improvement was driven by the 6.5% increase in rental rates as well as a 34% increase in contractor supply sales in our general rentals segment. The positive impact of these factors offset higher general rentals operating costs and declining revenues and profits in our traffic control segment. We also benefited from lower interest expense due to lower interest rates.
>
> […] "Following three and a half years of continued decline in our primary end market, first quarter data suggest that private non-residential construction has almost leveled off. For the full year we continue to anticipate diluted earnings per share, excluding charges, of $1.00 to $1.10. However, we're beginning to sense more optimism from our customers that their business has bottomed out and is beginning to turn. If business conditions improve as we go through the year, we would expect better results.
>
> Beyond 2004, a sustained rebound in private non-residential construction has the potential to drive revenues significantly higher. As that happens, our substantial operating leverage should allow us to grow earnings much faster than revenues."

38. On May 10, 2004, United Rentals filed with the SEC its quarterly report on Form 10-Q. The Company's Form 10-Q was signed by defendants Milne and Sherk and reaffirmed the Company's previously announced financial results. Moreover, the Company represented the following:

> The Consolidated Financial Statements of the Company included herein are unaudited and, in the opinion of management, such financial statements reflect all adjustments, consisting only of normal recurring adjustments, necessary to present fairly the results of the interim periods presented. Interim financial statements do not require all disclosures normally presented in year-end financial statements, and, accordingly, certain disclosures have been omitted.

39. Additionally, the Company's Form 10-Q included the following Certifications

signed by each of defendants Hicks and Milne:

> **2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;**
>
> **3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrants as of, and for, the periods presented in this report**; […] [Emphasis added.]

40. On July 21, 2004, United Rentals reported its financial and operational results for the second quarter ended June 30, 2004. The press release stated, in pertinent part, as follows:

> United Rentals, Inc. . . . reported second quarter revenues of $776.0 million, an increase of 6.6% compared with $728.1 million for the second quarter of 2003. Operating income for the second quarter of 2004 was $107.1 million, an increase of 13.2% compared with $94.6 million for the second quarter of 2003. Adjusted net income for the second quarter of 2004 was $41.5 million and adjusted diluted earnings per share was $0.42 compared with net income of $23.4 million and diluted earnings per share of $0.25 for the second quarter of 2003. After recognizing a $6.5 million charge, net of tax, relating to the debt refinancing completed in the second quarter of 2004, the company reported GAAP net income of $35.0 million and GAAP diluted earnings per share of $0.36. […]
>
> **CEO Comments and Outlook**
> Wayland Hicks, chief executive officer said, "Our adjusted diluted earnings per share this quarter were up 68% from last year's second quarter and exceeded our expectations. These results reflected the strong operating performance in our general rentals segment and a substantial reduction in interest expense due to recent refinancings, partially offset by disappointing results in traffic control.
>
> "In general rentals, the 11.9% increase in total revenues included a 9.6% increase in same store rental revenues, which was largely

driven by our success in raising rental rates by 7.9%. This performance significantly outpaced our principal end market, private non-residential construction, which was up only slightly during the first five months of 2004. The impact of the revenue growth on profitability was enhanced by our operating leverage, resulting in general rentals operating income growth of 33.6%."

Hicks continued, "As a result of our positive rental rate trend and lower interest expense, we are raising our full year outlook for diluted earnings per share, excluding charges, to $1.20 from the previous range of $1.00 to $1.10."

41. On August 9, 2004, United Rentals filed with the SEC its quarterly report on Form 10-Q. The Company's Form 10-Q was signed by defendants Milne and Sherk and reaffirmed the Company's previously announced financial results and represented the following:

> The Consolidated Financial Statements of the Company included herein are unaudited and, in the opinion of management, such financial statements reflect all adjustments, consisting only of normal recurring adjustments, necessary to present fairly the results of the interim periods presented. Interim financial statements do not require all disclosures normally presented in year-end financial statements, and, accordingly, certain disclosures have been omitted.

42. Additionally, the Company's Form 10-Q included the following Certifications signed by each of defendants Hicks and Milne:

> **2. Based on my knowledge,** ***this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report*****; 3. Based on my knowledge**, ***the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrants as of, and for, the periods presented in this report***; […] [Emphasis added.]

43. The statements contained in ¶¶ 26-42 were each materially false and misleading

because the defendants failed to disclose and indicate: (1) that the Company, in an effort to generate a more favorable stock price and raise capital, manipulated its financial results through the use of restructuring charges, asset writedowns, and debt refinancing; (2) that the Company improperly delayed recognition of bad accounts receivable; (3) that as a result of these manipulations, the Company's announced financial results were in violation of generally accepted accounting principles ("GAAP"); and (4) that the Company's financial results were materially inflated at all relevant times.

**The Truth Begins to Emerge**

44. On August 30, 2004, United Rentals announced that it had received notice that the SEC was conducting a non-public, fact-finding inquiry of the Company. The notice stated that the inquiry did not mean that the SEC had concluded that the Company or anyone else had broken the law or that the SEC had a negative opinion of any person, entity or security. The notice was accompanied by a subpoena requesting the production of documents relating to certain of the Company's accounting records.

45. News of this shocked the market. Shares of United Rentals fell $4.39 per share, or 21.53 percent, to close at $16.00 per share on August 30, 2004 on unusually heavy trading volume.

46. An article dated August 31, 2004 and entitled: "United Rentals sees more losses; Stock falls amid SEC probe of accounting methods" appeared in CBS.Marketwatch.com and provided, in pertinent part, the following additional details:

> United Rentals' stock lost more ground Tuesday in the wake of news that the Securities and Exchange Commission requested accounting documents from the company.

> Shares of Greenwich, Conn.-based United Rentals (URI: news, chart, profile), which dropped more than 21 percent in the previous session, lost another $1.31, or 8.2 percent, to $14.69 in volume of 6 million shares. […]
>
> **"With our long-standing concerns about United Rentals' financial reporting, we view a broad SEC investigation as more of a concern versus a more specific inquiry**."
>
> Smith Barney said the company's near-term business prospects appear to be improving due to rising rental rates, but said it remains cautious about the company's long-term financial position.
>
> According to the research firm, United Rentals over eight years has generated a negative $81 million in free cash flow. [Emphasis added.]

**UNITED RENTALS' VIOLATION OF GAAP RULES**

47. In order to falsely inflate its financial results during the Class Period, Defendants caused United Rentals to violate GAAP and SEC rules.

48. United Rentals included its false and incorrect financial statements and results in press releases and in its 10-K for fiscal 2003 and in fiscal 2003 third quarter and fiscal 2004 first and second quarter quarterly reports on Form 10-Q. These SEC filings represented that the financial information presented therein was a fair statement of United Rentals' financial results and that the results were prepared in accordance with GAAP.

49. These representations were false and misleading as to the financial information reported, as such financial information was not prepared in conformity with GAAP, nor was the financial information a "fair representation" of United Rentals' operations, causing the financial results to be presented in violation of GAAP and SEC rules.

50. Regulation S-X [17 C.F.R. Sec.210.4-01(a)(1)] states that financial statements

filed with the SEC which are not prepared in compliance with GAAP are presumed to be misleading and inaccurate. Regulation S-X requires that interim financial statements must also comply with GAAP, with the exception that interim financial statements need not include disclosure that would be duplicative of disclosures accompanying annual financial statements.

51. Due to these accounting improprieties, United Rentals presented its financial results in a manner which violated GAAP, including the following fundamental accounting principles:

(a) The principle that "interim financial reporting should be based upon the same accounting principles and practices used to prepare annual financial statements" was violated (APB No. 28, ¶10);

(b) The principle that "financial reporting should provide information that is useful to present to potential investors and creditors and other users in making rational investment, credit, and similar decisions" was violated (FASB Statement of Concepts No. 1, ¶34);

(c) The principle that "financial reporting should provide information about the economic resources of an enterprise, the claims to those resources, and effects of transactions, events, and circumstances that change resources and claims to those resources" was violated (FASB Statement of Concepts No. 1, ¶40);

(d) The principle that "financial reporting should provide information about an enterprise's financial performance during a period" was violated (FASB Statement of Concepts No. 1, ¶42);

(e) The principle that "completeness, meaning that nothing is left out of the

information that may be necessary to insure that it validly represents underlying events and conditions" was violated (FASB Statement of Concepts No. 2, ¶79);

(f) The principle that "financial reporting should be reliable in that it represents what it purports to represent" was violated (FASB Statement of Concepts No. 2, ¶¶58-59); and

(g) The principle that "conservatism be used as a prudent reaction to uncertainty to try to ensure that uncertainties and risks inherent in business situations are adequately considered" was violated. (FASB Statement of Concepts No. 2, ¶95).

52. The adverse information concealed by defendants during the Class Period and detailed above was in violation of Item 303 of Regulation S-K under the federal securities law (17 C.F.R. Sec. 229.303).

53. Further, the undisclosed adverse information concealed by Defendants during the Class Period is the type of information which because of SEC regulations, regulations of the national stock exchanges and customary business practices, is expected by investors and securities analysts to be disclosed and is known by corporate officials and their legal and financial advisors to be the type of information which is expected to be and must be disclosed.

**Additional Scienter Allegations**

54. As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the

federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding United Rental, their control over, and/or receipt and/or modification of United Rental's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning United Rental, participated in the fraudulent scheme alleged herein.

55. Defendants knew and/or recklessly disregarded the falsity and misleading nature of the information which they caused to be disseminated to the investing public. The ongoing fraudulent scheme described in this complaint could not have been perpetrated over a substantial period of time, as has occurred, without the knowledge and complicity of the personnel at the highest level of the Company, including the Individual Defendants.

**Undisclosed Adverse Information**

56. The market for United Rentals' securities was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and failures to disclose, United Rentals' common stock traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired United Rentals securities relying upon the integrity of the market price of United Rentals' securities and market information relating to United Rentals, and have been damaged thereby.

57. During the Class Period, Defendants materially misled the investing public, thereby inflating the price of United Rentals' common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and

misrepresented the truth about the Company, its business and operations, as alleged herein.

58. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false or misleading statements about United Rentals' business, prospects and operations. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of United Rentals and its business, prospects and operations, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.

59. Defendants' materially false and misleading statements during the Class Period resulted in plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

**Applicability Of Presumption Of Reliance:**
**Fraud-On-The-Market Doctrine**

60. At all relevant times, the market for United Rentals' securities was an efficient market for the following reasons, among others:

(a) United Rentals' stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b) As a regulated issuer, United Rentals filed periodic public reports with the SEC and the NYSE;

(c) United Rentals regularly communicated with public investors via established market communication mechanisms, including through regular

disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d) United Rentals was followed by several securities analysts employed by major brokerage firms who wrote reports, which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

61. As a result of the foregoing, the market for United Rentals' securities promptly digested current information regarding United Rentals from all publicly available sources and reflected such information in United Rentals' stock price. Under these circumstances, all purchasers of United Rentals' securities during the Class Period suffered similar injury through their purchase of United Rentals' securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

62. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each

of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of United Rentals who knew that those statements were false when made.

**FIRST CLAIM**
**Violation Of Section 10(b) Of**
**The Exchange Act Against And Rule 10b-5**
**Promulgated Thereunder Against All Defendants**

63. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

64. During the Class Period, United Rentals and the Individual Defendants, and each of them, carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (a) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (b) artificially inflate and maintain the market price of United Rentals' securities; and (c) cause Plaintiff and other members of the Class to purchase United Rentals' securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

65. Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for United Rentals' securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary

participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

66. In addition to the duties of full disclosure imposed on Defendants as a result of their making of affirmative statements and reports, or participation in the making of affirmative statements and reports to the investing public, Defendants had a duty to promptly disseminate truthful information that would be material to investors in compliance with the integrated disclosure provisions of the SEC as embodied in SEC Regulation S-X (17 C.F.R. Sections 210.01 et seq.) and Regulation S-K (17 C.F.R. Sections 229.10 et seq.) and other SEC regulations, including accurate and truthful information with respect to the Company's operations, financial condition and earnings so that the market price of the Company's securities would be based on truthful, complete and accurate information.

67. United Rentals and the Individual Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of United Rentals as specified herein.

68. These Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of United Rentals' value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about United Rentals and its business

operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of United Rentals' securities during the Class Period.

69. The Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (a) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period; (b) the Individual Defendants were privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; and (c) the Individual Defendants were aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

70. The Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing United Rentals' operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and misstatements of the Company's business, operations and earnings throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

71. As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of United Rentals' securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of United Rentals' publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired United Rentals securities during the Class Period at artificially high prices and were damaged thereby.

72. At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known of the true financial condition and business prospects of United Rentals, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their United Rentals securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

73. By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

74. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**SECOND CLAIM**
**Violation Of Section 20(a) Of**
**The Exchange Act Against the Individual Defendants**

75. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

76. The Individual Defendants acted as a controlling person of United Rentals within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

77. In particular, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

78. As set forth above, United Rentals and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions each as a controlling person, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of United Rentals' and the Individual Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

(b) Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) Such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: September 27, 2004

______________________________
James E. Miller
Federal Bar. I.D. No. CT-21560

Patrick A. Klingman
Federal Bar. I.D. No. CT-17813
Shepherd, Finkelman, Miller & Shah, LLC
One Lewis Street
Hartford, Connecticut 06103
(Tel) (860) 246-0600
(Fax) (860) 246-0700
(E-mail) jmiller@sfmslaw.com
pklingman@sfmslaw.com

Marc A. Topaz, Esquire
Richard A. Maniskas, Esquire
Schiffrin & Barroway, LLP
Three Bala Plaza East
Suite 400
Bala Cynwyd, PA 19004
(Tel) (610) 667-7706
(Fax) (610) 667-7056

Attorneys for Plaintiff